**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 13 2019 ★

BROOKLYN OFFICE

**MISC 19-418**

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

GARAUFIS, J.

R. ALEXANDER ACOSTA, Secretary of Labor,
United States Department of Labor,

    Petitioner,

v.

FOOD FARM GROUP, INC. d/b/a FOOD FARM SUPERMARKET and AFZAL RAHMAN, individually and as a custodian of records,

    Respondents.

Misc. Action No. _____

## MEMORANDUM OF LAW IN SUPPORT OF SECRETARY'S MOTION TO COMPEL RESPONDENTS TO PRODUCE DOCUMENTS AND TESTIFY PURSUANT TO ADMINISTRATIVE SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM*

KATE S. O'SCANNLAIN
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

ANDREW KARONIS
Senior Trial Attorney

*Attorneys for Petitioner R. Alexander Acosta, Secretary of Labor*

U.S. Department of Labor
Attorneys for the Secretary of Labor
Office of the Regional Solicitor
201 Varick Street, Room 983
New York, New York 10014
Tel. 646-264-3681
Fax 646-264-3660
karonis.andrew@dol.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ............................................................................................................................ 7

    I.    The Secretary is Authorized to Issue Subpoenas Under the FLSA,
        Which Are Enforceable in this Court ........................................................................ 7

        A. The Investigation Here Is Conducted Pursuant to a
           Legitimate Purpose ............................................................................................. 8

        B. The Requested Records Are Relevant to the Secretary's
           Lawful Purpose ................................................................................................. 10

        C. The Documents Demanded Are Not within the Agency's
           Possession ........................................................................................................ 12

        D. The Agency Has Followed the Administrative Steps Required
           by Statute ......................................................................................................... 12

    II.   The Demand is Not Unreasonably Broad or Burdensome ....................................... 13

    III.  An Order to Enforce Is Necessary to Prevent the Loss of Evidence
        and a Lapse in the Statute of Limitations ................................................................ 14

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Federal Cases**

*Acosta v. Fusilli at Miller Place, Inc.*, No. 18-mc-426,
   2018 WL 3302183 (E.D.N.Y. July 5, 2018) .................................................. 10, 11, 13, 14, 15

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984) ................................................................ 7

*Donovan v. Mehlenbacher*, 652 F.2d 228 (2d Cir. 1981) ...................................................... 7

*Wall v. Constr. & Gen. Laborers' Union*, 224 F.3d 168 (2d Cir. 2000) ............................... 15

*EEOC v. United Parcel Service, Inc.*, 587 F.3d 136 (2d Cir. 2009) ................................. 8, 13

*Harris v. Subcontracting Concepts, LLC*, No. 12-mc-82,
   2013 WL 12080918 (N.D.N.Y. Feb. 11, 2013) ............................................................. 15

*In re Gimbel*, 77 F.3d 593 (2d Cir. 1996) ............................................................................ 10

*In re McVane*, 44 F.3d 1127 (2d Cir. 1995) .................................................................... 8, 10

*Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93 (2d Cir. 2009) .............................................. 11

*NLRB v. Am. Med. Response, Inc.*, 438 F.3d 188 (2d Cir. 2006) ......................... 8, 9, 12, 13

*NLRB v. DN Callahan, Inc.*,
   No. 18MC 879, 2018 WL 4190153 (E.D.N.Y. Aug. 7, 2018) ......................................... 8

*Okla. Press Pub. Co. v. Walling*, 327 U.S. 186 (1946) ......................................................... 9

*United States v. Fischer*, 993 F.Supp.2d 238 (E.D.N.Y. 2013) ............................................ 8

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .................................................... 8, 9

*U.S. EEOC v. Performance Food Grp. Co.*, No. 09-2200,
   2010 WL 11570678 (D. Md. Feb. 18, 2010) ................................................................. 15

*Wall v. Constr. & Gen. Laborers' Union*, 224 F.3d 168 (2d Cir. 2000) ............................... 15

# TABLE OF AUTHORITIES (cont'd)

**Statutes**

| | |
|---|---|
| 15 U.S.C. §49 | 7, 12 |
| 15 U.S.C. §50 | 7 |
| 15 U.S.C. §209 | 7, 12 |
| 29 U.S.C. §201 | 1 |
| 29 U.S.C. §203 | 10 |
| 29 U.S.C. §206 | 10 |
| 29 U.S.C. §207 | 10 |
| 29 U.S.C. §209 | 12 |
| 29 U.S.C. §211 | 10, 13 |
| 29 U.S.C. §211(a) | 7, 8, 11 |
| 29 U.S.C. §211(c) | 9 |
| 29 U.S.C. §255 | 11, 14 |

**Regulations and Miscellaneous**

| | |
|---|---|
| 29 C.F.R. §516.2 | 9, 10, 11, 13 |
| 29 C.F.R. §516.5 | 9, 10, 11, 13 |
| 29 C.F.R. §516.7 | 13 |
| 75 Fed. Reg. 55,352, 55,354 (Sept. 10, 2010) | 12 |

## PRELIMINARY STATEMENT

Petitioner R. Alexander Acosta, Secretary of Labor, United States Department of Labor (the "Secretary") petitions the Court to issue an order compelling Food Farm Group, Inc., d/b/a Food Farm Supermarket ("Food Farm") and Afzal Rahman, one of its owners (collectively, the "Respondents"), to produce documents and appear for testimony pursuant to a subpoena issued by U.S. Department of Labor, Wage and Hour Division ("Wage Hour" or "WHD"). The subpoena was issued by WHD pursuant to its investigation of Respondents for compliance with the Fair Labor Standards Act. 29 U.S.C. §§201 *et seq.*, (the "FLSA" or the "Act"). For almost four months, WHD has attempted to obtain documents and testimony from Respondents necessary for its investigation, and for four months, Respondents have been stonewalling the Secretary's every attempt to obtain compliance with WHD's duly served subpoeana *ad testificandum* and *duces tecum*.

It cannot be credibly disputed that WHD was authorized to issue the subpoena in question by Section 9 of the Act, that WHD's investigation is being conducted pursuant to the legitimate purpose of ensuring compliance with the Act or that the subpoena complied with all procedural requirements. The documents and testimony subpoenaed—which include basic corporate ownership information, hours worked and rate paid—are directly relevant to that investigation. Despite the fact that the scope of the subpoena is not unduly broad nor compliance burdensome, Respondents have failed to comply and have spurned every attempt by the Secretary to resolve this matter without judicial intervention. As the Court is authorized to enforce the Secretary's subpoena, and as Respondents have refused the Secretary's numerous accommodations, the Court should issue an order compelling Respondents to comply. Moreover, as Respondents' failure to

comply and delaying tactics could render any action time barred, the Court should toll the statute of limitations until such time as Respondents have complied with the subpoena.

## STATEMENT OF FACTS

This matter arises from an investigation by Wage Hour into Food Farm compliance with the FLSA. Declaration of William Dempsey dated February 7, 2019 ("Dempsey Dec.") ¶7; Declaration of Jeanne Zhuo dated February 4, 2019 ("Zhuo Dec.") ¶7; Declaration of Janese Gonzalez dated February 5, 2019 ("Gonzalez Dec.") ¶7. As part of this investigation, on September 13, 2018, WHD Investigator Jeanne Zhuo personally delivered to Respondents a request for documents (the "Appointment Letter"), which sought, *inter alia,* documents containing the names and contact information for all corporate owners of Food Farm, New York State quarterly Withholding, Wage Reporting and Unemployment Insurance Returns ("NYS-45 Forms") from October 2015 through that date, New York State Notice and Acknowledgement of Pay Rate and Payday ("form LS-54"), and records for all employees documenting their hours worked and wages paid as well documents setting forth employee contact information which is required to be kept pursuant to federal regulation. Zhuo Dec. ¶9 & Ex. 1. On October 1, 2018, WHD Investigator Janese Gonzalez contacted Mr. Rahman about the Appointment Letter and Mr. Rahman asked for an extension of the response time, up to and including October 5, 2018, which Ms. Gonzalez granted. Gonzalez Dec. ¶13. Respondents failed to provide WHD with the requested documents by October 5, 2018. *Id.* ¶14.

In light of Respondents' failure to produce documents in response to the Appointment Letter and Ms. Gonzalez' request, on October 2, 2018, WHD issued an administrative subpoena *duces tecum* and *ad testificandum.* Dempsey Dec. ¶12 & Ex. 2. The subpoena was signed by Regional Administrator Mark H. Watson, Jr. and requested time and payroll records for the period

2

beginning October 1, 2015, through the most recent completed pay period; records identifying employee contact information; corporate tax returns and invoices; a list of employees with their addresses, hourly rates or salaries, and job titles; cash disbursement records; and any W-2 or 1099 Forms, New York State Quarterly Combined Withholding, Wage Reporting and Unemployment Insurance Forms ("NYS-45 Forms"), New York State Acknowledgment of Pay Rate and Pay Date returns ("LS-54 Forms") among other documents. *Id.* Ms. Gonzalez duly served the subpoena on October 10, 2018 at Respondents' place of business, on October 10, 2018. Gonzalez Dec. ¶¶17-20 & Ex. 3. The return date on the subpoena was October 17, 2018. Dempsey Dec. ¶12 & Ex. 2.

On October 12, 2018, Ms. Gonzalez contacted Mr. Rahman by phone regarding the subpoena. Gonzalez Dec. ¶21. Mr. Rahman assured Ms. Gonzalez that he would be appearing on October 17, 2018 to testify, and that he would bring with him all responsive documents in his possession. *Id.* On October 17, 2018, the return date for the subpoena, Mr. Rahman failed to appear. *Id.* ¶22. Ms. Gonzalez called Mr. Rahman's cellphone and left a voice mail message asking him why he failed to appear, and requesting that he contact her as soon as possible. *Id.* ¶¶23-24. On October 18, 2018, Ms. Gonzalez received a FedEx package from Mr. Rahman, which contained some, but not all, of the documents subpoenaed. *Id.* ¶25. Specifically, the October 18, 2018 package did not contain any time records, payroll records, forms NYS-45, or documents listing the names and contact information of Food Farm's current and former employees; although the October 18, 2018 response contained LS-54 forms for most of Food Farm's employees, it failed to include a form LS-54 for one individual known to work there *Id.* ¶26.

On November 29, 2018, WHD Assistant District Director ("ADD") William Dempsey and WHD Investigator Jeanne Zhuo visited Food Farm's store and spoke with Mr. Rahman. Dempsey Dec. ¶17; Zhuo Dec. ¶12. Mr. Rahman claimed that he failed to appear because an emergency had

3

arisen. Dempsey Dec. ¶18. ADD Dempsey asked Mr. Rahman questions regarding the ownership and management of the company, Mr. Rahman gave inconsistent and at times contradictory responses. Dempsey Dec. ¶21.[1] Mr. Rahman likewise gave evasive responses to questions regarding reporting of state withholdings. Initially he told Mr. Dempsey he did not know what a NYS-45 was. Dempsey Dec. ¶19. After Mr. Dempsey explained the significance of the form, Mr. Rahman said he was not sure whether or not the establishment had been filing these returns. *Id.* Eventually Mr. Rahman said he would have to check with his accountant. *Id.* In the course of the interview, Mr. Dempsey repeatedly asked Mr. Rahman for the name of his accountant. Mr. Rahman repeatedly stated he could not remember. *Id.*

Mr. Rahman gave inconsistent and contradictory answers with respect to the missing time and payroll records. Dempsey Dec. ¶20. For example, with the payroll records, Mr. Rahman initially said that he just has the workers sign and acknowledgement of pay forms. *Id.* He subsequently said that the records were either in storage or in his home office. *Id.* Mr. Dempsey asked what Mr. Rahman meant when he said the records were in storage. *Id.* Mr. Dempsey asked him if "in storage" meant that the records had been deposited in a warehouse. *Id.* Mr. Rahman then said that the records were probably in his home office. *Id.* ADD Dempsey and WHI Zhuo then created a list of documents that were outstanding, handed the list to him, and told him that he would be expected to produce the missing records by December 3, 2018. Dempsey Dec. ¶¶22-23. At Mr. Rahman's request, ADD Dempsey agreed to extend Respondents' time to respond to

---

[1] In particular, Mr. Rahman identified Salima Khatun as the sole owner of Food Farm during WHD's initial September 13, 2018 on site visit, while describing himself only as a manager. Dempsey Dec. ¶21. However, on October 18, 2018, Mr. Rahman identified himself as a 40% owner, and to date has never provided Ms. Khatun's contact information. *Id.*

December 5, 2018. *Id.* ¶23. Respondents failed to provide the requested documents on December 5, 2018. Gonzalez Dec. ¶29.

On December 7, 2018, Janese Gonzalez contacted Mr. Rahman by phone to ask about the status of the documents Respondents failed to provide. *Id.* ¶30. Mr. Rahman asked Ms. Gonzalez for additional time to respond, and Ms. Gonzalez agreed to extend Respondents' time to respond to December 11, 2018. *Id.* ¶31. Respondents failed to provide the records by December 11, 2018. *Id.* ¶32. On December 17, 2018, WHD received some, but not all, of the documents requested. *Id.* ¶33. In particular, Respondents have still failed to provide:

- NYS-45 Forms;
- Time Records for each employee;
- Payroll records;
- The contact information for of all of Respondent Food Farm's owners.

*Id.* ¶34.

On January 7, 2019, the undersigned counsel for the Secretary contacted Mr. Rahman telephonically to inquire into the status of compliance with the subpoena. Declaration of Andrew Karonis dated February 8, 2019 ("Karonis Dec.") ¶6. I advised Mr. Rahman that the Secretary considered his prior responses incomplete, and required his testimony as set forth in the subpoena. *Id.*. The undersigned asked Mr. Rahman to provide a list of dates on which he could come to the WHD office and provide testimony and confirm whether he had any additional responsive documents. *Id.* ¶¶6-7. During that conversation, the undersigned reminded Mr. Rahman that he previously represented that he would provide WHD with additional responsive documents, including time records. *Id.* ¶7. Mr. Rahman acknowledged that he told ADD Dempsey that he had time records at his home, but Mr. Rahman said that he was confused and misspoke, and that in fact

5

he had provided WHD with all responsive documents in his possession. *Id.* The undersigned advised Mr. Rahman that notwithstanding his representations on the phone, he would need to come to WHD and testify as to that matter in person and under oath. *Id.* ¶8. Mr. Rahman stated that he was currently in his car and could not determine his availability as his calendar was at his office. *Id.* ¶9. Mr. Rahman stated that he would contact the undersigned on the following day, January 8, 2019, to advise of his availability and schedule his testimony. *Id.* As the undersigned had not heard back from Mr. Rahman, the undersigned tried to reach Mr. Rahman telephonically on January 8, 2019, at approximately 4:30PM. *Id.* ¶10. Though Mr. Rahman did not answer his phone, the undersigned left a voicemail, stating that it was imperative for Mr. Rahman to call back and schedule his testimony in order to avoid motion practice. *Id.* On January 9, 2019, at approximately noon, the undersigned again called Mr. Rahman's cell phone and left a message, again urging Mr. Rahman to contact the undersigned and schedule a mutually agreeable date for his testimony. *Id.* ¶11. Again, Mr. Rahman did not reply. *Id.* On February 4, 2019, the undersigned again attempted to reach Mr. Rahman by phone, and left a message advising him that unless he contacted the undersigned by February 7, 2019, 5:00P.M., the Secretary would file the instant motion to compel. *Id.* ¶¶12-13. To date, Mr. Rahman has not contacted the undersigned or WHD to schedule his testimony. *Id.* ¶14.

# ARGUMENT

## I. The Secretary is Authorized to Issue Subpoenas Under the FLSA, Which Are Enforceable in this Court

Section 11(a) of the Act, 29 U.S.C. §211(a), authorizes the Secretary to investigate and gather data regarding wages, hours and other conditions of employment to determine whether an employer is violating the Act. *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 409-10 (1984). In support of the Secretary's enforcement duties, Section 9 of the Act specifically grants the Secretary subpoena power, providing:

> For the purpose of any hearing or investigation provided for in this Act, the provisions of section 9 and 10 (relating to the attendance of witnesses and the production of books, papers, and documents) of the Federal Trade Commission Act of September 16, 1914, as amended [15 U.S.C. §§ 49, 50] are hereby made applicable to the jurisdiction, powers, and duties of the Secretary of Labor....

29 U.S.C. § 209.[2] Subpoenas issued under the Act are enforceable in this Court. *See* 15 U.S.C. § 49 (providing that if the subject of an agency subpoena disobeys that subpoena, the agency "may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence"); *see also Donovan v. Mehlenbacher*, 652 F.2d 228, 230 (2d Cir. 1981) ("[T]he Department of Labor clearly has the power to issue subpoenas in the course of an investigation conducted under statutory authority, and to have those subpoenas enforced by federal courts.").

---

[2] Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, provides in pertinent part:

> [T]he Commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation.... [I]n case of disobedience to a subpoena the Commission may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence.

7

Judicial review of administrative subpoenas is limited. *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995); *United States v. Fischer*, 993 F.Supp.2d 238, 241-2 (E.D.N.Y. 2013). To enforce an administrative subpoena, "[a]n agency must only show that (1) the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry *may be* relevant to that purpose, (3) that the information sought is not already within [its] possession, and (4) that the administrative steps required have been followed." *NLRB v. Am. Med. Response, Inc.*, 438 F.3d 188, 192 (2d Cir. 2006) (internal citations, quotation marks, and punctuation omitted; emphasis in original); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[I]t is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant."); *NLRB v. DN Callahan, Inc.*, No. 18MC 879, 2018 WL 4190153, at *3 (E.D.N.Y. Aug. 7, 2018). "An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met." *In re McVane*, 44 F.3d at 1136. "A subpoena that satisfies these criteria will be enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable or that compliance would be 'unnecessarily burdensome.'" *EEOC v. United Parcel Service, Inc.*, 587 F.3d 136, 139 (2d Cir. 2009).

Both administrative subpoenas meet all four requirements for enforcement, and Respondents cannot meet their burden to show that enforcement would be improper.

### A. The Investigation Here Is Conducted Pursuant to a Legitimate Purpose.

The Act grants the Secretary broad investigatory powers to determine compliance with its provisions. Section 11(a) gives the Secretary (or his designee) authority to investigate and gather data regarding "wages, hours, and other conditions and practices of employment in any industry subject to" the Act. 29 U.S.C. § 211(a). It also empowers the Secretary to enter and inspect such places and records as he may deem appropriate to determine whether any person has violated the

Act. *Id.* Section 11(c) of the Act further requires employers to make, keep, and preserve certain records as prescribed by the Secretary. 29 U.S.C. § 211(c). Pursuant to this mandate, the Secretary has issued regulations requiring employers subject to its terms to keep records of employees' names and contact information, hours worked each workday and total hours worked each work week, total daily or weekly straight time and overtime earnings, total wages paid each period, the date of payment and the pay period covered by the payment, among other items. *See* 29 C.F.R. § 516.2.

Here, the Secretary acts pursuant to his investigatory authority under the Act to determine whether Respondents and any other person acting as an employer are in compliance with the minimum wage, overtime, and recordkeeping provisions of the Act. Agencies do not need even probable cause of violations for the information to be relevant or within their subpoena powers. *Morton Salt Co.*, 338 U.S. at 642-43; *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 201 (1946). An agency "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that is not." *Morton Salt*, 338 U.S. at 642–43.[3]

WHD is statutorily empowered to determine whether Respondents have been in compliance with the Act. Requesting records and testimony regarding payroll, time worked, and the identities and contact information of the employer, are clearly legitimate and normal avenues of inquiry, squarely in the heart of the agency's enforcement authority. Accordingly, the first of the four requirements is satisfied. *Am. Med. Response, Inc.*, 438 F.3d at 192.

---

[3] Although Respondents may argue that the Act's minimum wage and overtime provisions may not apply to them, the U.S. Supreme Court has squarely rejected the notion that an entity may refuse to comply with a subpoena on the ground that it contests whether it is covered by the Act's requirements. *Walling*, 327 U.S. at 216–18.

## B. The Requested Records Are Relevant to the Secretary's Lawful Purpose.

Courts "broadly interpret relevancy" when enforcing administrative subpoenas. *Id.* at 192. "The relevance of the sought-after information is measured against the general purposes of the agency's investigation, 'which necessarily presupposes an inquiry into the permissible range of investigation under the statute.'" *In re McVane*, 44 F.3d at 1135. Further, the district court must "defer[] to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *Id.*; *see also In re Gimbel*, 77 F.3d 593, 601 (2d Cir. 1996); *Acosta v. Fusilli at Miller Place, Inc.*, No. 18-mc-426, 2018 WL 3302183, at *3 (E.D.N.Y. July 5, 2018) (enforcing Wage Hour subpoena).

The subpoenas here demand information that are clearly relevant to the Secretary's investigation but that has not been produced. Specifically, the subpoena seeks documents and testimony regarding (a) the identities and contact information of Food Farm's owners and managers, (b) payroll records; (c) withholding records; and (d) hours worked for each employee. Such information is uncontrovertibly relevant to the hours worked by employees and wages paid to them, and to the question of whether the Respondents are covered by the Act's requirements. *See* 29 U.S.C. §§ 203, 206, 207, 211. By law, Respondents are required to make and preserve many of these documents, such as time and pay records. *See* 29 C.F.R. § 516.2. Likewise, by law, employee contact information must be gathered and preserved. *Id.* Employee contact information is often necessary for Wage Hour investigators to be able to interview relevant employees, determine whether records are accurate, and identify potential violations of the Act.

Here, given Respondents' failure to produce full and complete records, and given Mr. Rahman's inconsistent and contradictory statements concerning the existence of those records, it

is critical to the Secretary's investigation that Respondents produce all records sought for the years specified in the subpoena, and be ordered to appear before WHD for testimony.

Finally, WHD has acted within its authority to seek records and information regarding the owners of Food Farm and any business associated with Respondents to confirm that Respondents are covered under the Act. *See Fusilli at Miller Place, Inc.*, 2018 WL 3302183, at *2 (enforcing Wage Hour subpoena that sought information relevant to employer coverage, such as "names and addresses of all businesses, firms, or work locations owned and/or operated by [a respondent] or in which [the respondent] was an officer or had an ownership interest"); *see also* 29 U.S.C. § 211(a) (authorizing the "investigat[ion of] such facts, conditions, practices, or matters as [the Administrator] may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter"); 29 C.F.R. Part 779 (defining "employment to which the Act may apply"); *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96–97 (2d Cir. 2009) (summarizing the Act's "coverage" provisions).

As with the subject matter of the subpoena, the temporal scope of the Secretary's subpoena (i.e. October 2015 to October 2018) is reasonable as well. In fact, the time period specified does no more than to track the Secretary's regulations, which require "all payroll or other records containing the employee information and data required under any of the applicable sections of this part" — to be preserved for at least three years. *See* 29 C.F.R. §§ 516.2, 516.5. Similarly, the FLSA's statute of limitation is three years in the case of willful violations. 29 U.S.C. § 255. Given Respondents' reticence to produce records and their inconsistent statements to WHD regarding these matters, it is critical to the Secretary's investigation that Respondents produce all records sought for the full three years specified in the subpoena, and to appear and testify regarding these

records under oath. Accordingly, the second of the four requirements is met. *Am. Med. Response, Inc.*, 438 F.3d at 192.

### C. The Documents Demanded Are Not within the Agency's Possession.

The documents sought by the subpoena *duces tecum* are not within the Department's possession. As set forth in the Statement of Facts and the Declarations of Janese Gonzaelz, although Respondents have produced some documents, their submission is materially incomplete. Gonzalez Dec. ¶34. The Secretary seeks the information that has not yet been produced, notably time, payroll, and NYS-45 Form withholding records for the full three year period. The third of the four requirements is therefore satisfied. *Am. Med. Response, Inc.*, 438 F.3d at 192.

### D. The Agency Has Followed the Administrative Steps Required by Statute.

The Secretary followed all the administrative steps required for subpoenas *duces tecum* and *ad testificandum*. By the Secretary's Order 05-2010, the Wage Hour Administrator is delegated the responsibility to issue administrative subpoenas under section 9 of the Act, 29 U.S.C. § 209. 75 Fed. Reg. 55,352, 55,354 (Sept. 10, 2010). The same order re-delegates this subpoena authority to Wage Hour regional administrators. *Id.*

Here, the subpoenas were issued pursuant to statutory authority and were signed on October 2, 2018, by a regional administrator of Wage Hour. *See* 15 U.S.C. § 49; 29 U.S.C. § 209; Dempsey Dec. ¶12 & Ex. 2. On October 10, 2018, WHD investigator Gonzalez served the subpoenas on Lovely Singh, an employee of Food Farm, at Respondents' place of business. Gonzalez Dec. ¶17 & Ex. 3. Mr. Singh was identified as the employee in charge at the supermarket (Gonzalez Dec. ¶19), and represented that he was authorized to accept the subpoena on behalf of Respondents. *Id.* ¶¶19-20. Mr. Rahman acknowledged having been given the subpoena. *Id.* ¶18. Nonetheless, Respondents have failed to provide complete responses to the documents

subpoenaed, and have ignored numerous attempts to schedule a time to appear at WHD's office. *Id.* ¶¶17-21; Karonis Decl. ¶¶6-15.

Respondents have actual knowledge of the subpoenas, and all relevant administrative steps required by the Act have been followed. *Am. Med. Response, Inc.*, 438 F.3d at 192. Accordingly, this Court should enforce the subpoenas.

## II. The Demand is Not Unreasonably Broad or Burdensome.

"A subpoena that satisfies [the four aforementioned] criteria will be enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable or that compliance would be 'unnecessarily burdensome.'" *United Parcel Serv., Inc.*, 587 F.3d at 139 (quoting *Am. Med. Response, Inc.*, 438 F.3d at 193). Respondents cannot meet that burden here because the subpoena is plainly reasonable and not unduly burdensome.

As set forth above, the subpoenas seek only documents that are clearly related to WHD's lawful investigation of Respondents and their employment practices. The records sought are business documents that are required to be maintained and preserved, or are otherwise essential to WHD investigation, and must be produced upon Wage Hour's demand. *See* 29 U.S.C. § 211; 29 C.F.R. § 516.2 (requiring that an employer "maintain and preserve payroll and other records containing" employees' full names, addresses, work schedules, hourly rates of pay, and hours worked); *Id.* § 516.5 (requiring the preservation of certain records for three years); *Id.* § 516.7 (requiring that records "be available for inspection and transcription by the [Wage Hour] Administrator or a duly authorized and designated representative"). Moreover, documents regarding Food Farm's other owners and related companies are relevant to whether Respondents are employers covered under the Act, and the issue of joint employment. *See Fusilli at Miller*

*Place, Inc.*, 2018 WL 3302183, at *2. Respondents should be able to produce all documents sought by the subpoena in the ordinary course of their business.

WHD has provided Respondents with ample opportunities to produce the documents at issue and appear for testimony. At this point, it is quite apparent that Respondents will not comply absent an order from this Court. *See* Karonis Dec. ¶15.

### III. An Order to Enforce Is Necessary to Prevent the Loss of Evidence and a Lapse in the Statute of Limitations.

Respondents' ongoing failure to comply with WHD's subpoena undermines the Secretary's ability to enforce the Act and WHD's mandate to protect the welfare of the nation's workforce. As noted, the Act typically has a two-year statute of limitation, which is extended to three years for willful violations. 29 U.S.C. § 255. Since violations under the Act accrue on a workweek basis, Respondents' ongoing failure to comply with the subpoenas could well render any action barred, at least in part, by the statute of limitations. Allowing an employer to delay investigation and thereby run down the statute of limitations effectively circumvents the requirements of the Act. Likewise, Respondents' conduct raises the likelihood that evidence will be lost or become stale in the intervening time period. As set forth in the declarations of Janese Gonzalez and Andrew Karonis, the Secretary has diligently attempted to work with Respondents to obtain these documents. Respondents' obstinate refusal to comply with WHD's administrative subpoena could interfere with the Secretary's effort to make workers whole, and has already delayed such efforts. Accordingly, an order from this Court compelling compliance with the subpoena *duces tecum* and *ad testificandum* is necessary and appropriate.

Likewise, in order to preserve the Secretary's investigatory authority and to mitigate the effects of Respondents' delay on this investigation, the Secretary respectfully requests that the Court toll the applicable statute of limitations from October 17, 2018—the return date of the

subpoena—until such time as Respondents have fully complied by producing all responsive documents. *See Wall v. Constr. & Gen. Laborers' Union*, 224 F.3d 168, 176 (2d Cir. 2000) ("A defendant may be equitably estopped from asserting the statute of limitations in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit'") (internal quotation marks omitted). Respondents, not their employees who may ultimately be owed back wages, should bear the cost of their failure to comply with the subpoenas and the delays they have caused in WHD's investigation and ability to undertake the agency's statutory mandate to protect workers. Courts in this circuit and elsewhere regularly grant such relief. *See, e.g., Fusilli at Miller Place, Inc.*, 2018 WL 3302183, at *1; *Harris v. Subcontracting Concepts, LLC*, No. 12-mc-82, 2013 WL 12080918, at *8 (N.D.N.Y. Feb. 11, 2013); *U.S. EEOC v. Performance Food Grp. Co.*, No. 09-2200, 2010 WL 11570678, at *4 (D. Md. Feb. 18, 2010).

## CONCLUSION

The subpoena *duces tecum* and *ad testificandum* issued to Respondents by WHD is procedurally sound, reasonable, and seeks relevant material not already in the Secretary's possession. Further, compliance will not be unnecessarily burdensome or unreasonable. Accordingly, the Secretary respectfully submits that the subpoenas must therefore be enforced and requests an order tolling the statute of limitations from the date that Respondents failed to comply until such date as the Secretary informs the Court that they have complied in full.

DATED: February 11, 2019
New York, New York

KATE S. O'SCANNLAIN
Solicitor of Labor

JEFFREY S. ROGOFF
Regional Solicitor

BY: /s/ Andrew Karonis
ANDREW KARONIS
Senior Trial Attorney

U.S. Department of Labor,
*Attorneys for Plaintiff Secretary of Labor*

U.S. Department of Labor
Office of the Regional Solicitor
201 Varick Street, Room 983
New York, NY 10014
(646) 264-3681
(646) 264-3660 (fax)
karonis.andrew@dol.gov
NY-SOL-ECF@dol.gov